IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Myreon Wright,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WorkforceQA, LLC; Psychemedics Corporation; and Concentra, Inc. d/b/a Concentra Health Services, Inc., Concentra Medical Centers, and Concentra South Carolina, LLC,<br>　　　　　　Defendants. | C/A No.: 2:26-cv-02999-DCN<br><br><br>COMPLAINT<br>Jury Trial Requested |

## **INTRODUCTION**

Plaintiff Myreon Wright, by and through his undersigned counsel, brings the Causes of Action of Negligence, Negligent Supervision, Breach of Contract, Defamation, and Tortious Interference with Contractual Relations and Prospective Contractual Relations against Defendants: WorkforceQA, LLC; Psychemedics Corporation; and Concentra, Inc. d/b/a Concentra Health Services, Inc., Concentra Medical Centers, and Concentra South Carolina, LLC, based upon the following allegations.

## **PARTIES**

1. Plaintiff Myreon Wright is a citizen of the United States and resides in Dorchester County, South Carolina.

2. Defendant WorkforceQA, LLC ("WorkforceQA"), is a limited liability company headquartered in Salt Lake City, Utah. WorkforceQA regularly conducts business in South

2

Carolina and maintains offices and/or business locations within the State, including a location at 7519 Rivers Avenue, North Charleston, South Carolina 29406.

3. Defendant Psychemedics Corporation ("Psychemedics") is a publicly traded, for-profit drug testing laboratory organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business in Dallas, Texas. Pychemedics regularly conducts business and processes tests for employers across South Carolina, including employers in Charleston County, South Carolina.

4. Defendant Concentra, Inc. d/b/a Concentra Health Services, Inc., Concentra Medical Centers, and Concentra South Carolina, LLC ("Concentra") is a for-profit health care company organized and existing under the laws of the State of Delaware, with its principal place of business in Addison, Texas. Concentra regularly conducts business in South Carolina, with multiple operating locations in Charleston County, including urgent care and occupational medicine centers.

### JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and other Federal statutes. This Court also has pendant, ancillary, and supplementary jurisdiction over so much of this action as is based on State law.

6. Venue is proper in the Charleston Division, because the Causes of Action arose in Charleston County, which is therein the Charleston Division. The acts and practices complained of occurred in Charleston County and one or more Defendants regularly conduct business within Charleston County.

### FACTS

7. Plaintiff Myreon Wright is a thirty-six (36) year old professional commercial truck driver with years of experience in the interstate trucking industry.

3

8. At all relevant times, Plaintiff was a co-owner and operator of Precision Logistics by Summers Wright, LLC, a long-distance trucking company engaged in commercial freight transportation throughout the United States.

9. Precision Logistics by Summers Wright LLC is jointly owned by Plaintiff and Jessica Summers, who assists with business operations and administrative matters for the company.

10. In or around March 2025, Plaintiff and Precision Logistics sought to enter into a commercial transportation relationship with J.B. Hunt Transport Services, Inc., a nationwide logistics and trucking company that contracts with independent carriers and drivers to transport freight throughout the United States.

11. As part of this process, Plaintiff and J.B. Hunt entered into and executed a pre-hire agreement, which was intended to allow Plaintiff and Precision Logistics to begin transporting freight on behalf of the company once the onboarding process was completed.

12. As a mandatory condition of the onboarding process, J.B. Hunt required Plaintiff to undergo pre-employment drug screening in compliance with federal commercial motor carrier safety regulations. The required screening included both a urine drug test and a hair follicle drug test.

13. Upon information and belief, Defendants entered into one or more agreements with J.B. Hunt and/or with each other governing the collection, testing, administration, review, verification, and reporting of drug test results for applicants and commercial drivers.

14. The services contemplated by such agreements were intended to directly affect individuals undergoing testing, including Plaintiff, and were intended to ensure the accurate collection, processing, and reporting of drug testing information.

15. Plaintiff was among the class of people intended to benefit from Defendants' performance of those contractual obligations because the services were performed directly upon Plaintiff's specimens and involved the reporting of information concerning Plaintiff.

16. Specifically, J.B. Hunt directed Plaintiff to report to Defendant Concentra, an occupational health and drug testing provider located in North Charleston, South Carolina, for specimen collection.

17. On or about March 19, 2025, Plaintiff presented himself to Concentra and submitted to the required drug testing procedures. During that visit, Plaintiff provided both a urine specimen and a hair follicle sample as required.

18. Concentra was responsible for collecting the specimens, labeling them, documenting chain-of-custody information, and ensuring that the samples were properly associated with Plaintiff's identifying information.

19. After collection, Plaintiff's hair follicle specimen was transmitted to Defendant Psychemedics, a nationally recognized laboratory and drug testing company that specializes in the analysis of hair follicle specimens for the detection of controlled substances and drug metabolites.

20. Upon information and belief, Psychemedics conducted laboratory testing and analysis on Plaintiff's hair follicle specimen, which was assigned a unique Specimen Identification Number. In doing so, Psychemedics was responsible for maintaining the accuracy and integrity of the specimen identification, testing, and reporting process.

21. Upon information and belief, the laboratory analysis performed by Psychemedics determined that Plaintiff's hair follicle specimen tested negative for cocaine, cocaine metabolites, and all other controlled substances at the applicable testing cutoff levels.

22. Despite the negative laboratory findings, the drug testing information associated with Plaintiff's screening was subsequently transmitted to WorkforceQA, an out-of-state third-party company responsible for reviewing, processing, maintaining, and reporting drug testing information to employers, prospective employers, and regulatory reporting systems utilized within the commercial trucking industry, including the FMCSA Drug and Alcohol Clearinghouse.

23. At some point during the collection, processing, reporting, review, or transmission of Plaintiff's drug testing information, Defendants failed to maintain proper specimen identification controls, chain-of-custody procedures, reporting safeguards, quality assurance measures, and/or verification protocols.

24. As a result of these failures, Plaintiff's identifying information became improperly associated with a specimen belonging to another individual.

25. Specifically, Defendants erroneously attributed it to Plaintiff and reported as his own a positive cocaine metabolite (BZE) result that belonged to another individual and was not derived from Plaintiff's urine specimen, hair follicle specimen, or any other specimen collected from Plaintiff.

6

26. Defendants knew or should have known that Plaintiff's drug testing was being performed as a condition of Plaintiff's onboarding process with J.B. Hunt and that the reported results would be relied upon in determining whether Plaintiff would be permitted to enter into and perform transportation services under the pre-hire agreement.

27. Moreover, Defendants knew or should have known that other potential employers and regulatory agencies would rely upon the accuracy of the reported test results when making employment and licensing decisions affecting Plaintiff.

28. Notwistanding this information, Defendants, individually and/or through their agents, employees, representatives, contractors, and reporting systems, caused Plaintiff to be reported as having tested positive for cocaine metabolites despite the availability of specimen identification records demonstrating the discrepancy.

29. WorkforceQA thereafter communicated and published the false positive drug test result to J.B. Hunt Transport Services, Inc. and, upon information and belief, caused or contributed to the reporting of the false result to the FMCSA Drug and Alcohol Clearinghouse.

30. On or about March 31, 2025, J.B. Hunt issued written correspondence to Plaintiff notifying him that his employment and contractual relationship with the company would not proceed due to the reported positive drug test.

31. Based upon the false positive drug test result reported by Defendants, J.B. Hunt rescinded Plaintiff's pre-hire agreement, refused to permit Plaintiff to continue the onboarding process or undergo a retest, and terminated Plaintiff's opportunity to enter into a lucrative business relationship that would have generated substantial revenue for Precision Logistics, despite Plaintiff's insistence that he had never used cocaine and that the reported result was incorrect.

7

32. After learning of the alleged positive result, Plaintiff independently obtained another drug test from an unrelated testing provider. The independent drug test obtained by Plaintiff confirmed that he tested negative for all controlled substances.

33. Plaintiff submitted formal written requests to Defendants requesting immediate internal review of the drug test collection, labeling, and reporting procedures associated with Plaintiff's specimens.

34. In or around July 24, 2025, during the course of the investigation, Psychemedics reviewed the testing records associated with Plaintiff's specimen and confirmed that Plaintiff's hair follicle specimen tested negative for controlled substances, including cocaine, at all applicable testing thresholds.

35. Documentation reviewed by the parties further affirmed that the specimen identification number associated with the reported positive cocaine result did not correspond with the identification number assigned to Plaintiff's specimen. The positive cocaine result that was reported to J.B. Hunt belonged to another individual and was mistakenly attributed to Plaintiff.

36. Plaintiff's erroneous drug test result was nevertheless published, maintained, and disseminated through drug testing reporting systems relied upon by employers, motor carriers, and regulatory agencies throughout the commercial trucking industry, including the Federal Motor Carrier Safety Administration Drug and Alcohol (FMCSA) Clearinghouse.

37. Even after Defendants were made aware of the discrepancy, Defendants failed to timely correct, retract, or remove the false report from the systems in which it had been published.

8

38. As a direct consequence of Defendants' actions and omissions, Plaintiff became subject to restrictions imposed by the FMCSA Clearinghouse. Such restrictions included requirements that Plaintiff pay for and submit to ongoing drug testing in order to continue operating commercial vehicles.

39. The presence of the false positive drug test within the Clearinghouse database also negatively affected Plaintiff's ability to obtain employment or contractual opportunities within the trucking industry.

40. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial damages, including but not limited to: loss of the business opportunity with J.B. Hunt; loss of income and future earnings; damage to his professional reputation within the trucking industry; costs associated with additional drug testing; emotional distress and professional hardship; and other economic and consequential damages.

<u>**FIRST CAUSE OF ACTION**</u>
*NEGLIGENCE*
**(Against All Defendants)**

41. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

42. At all relevant times, Defendants owed Plaintiff a duty to exercise reasonable care in the collection, labeling, identification, handling, processing, testing, verification, maintenance, transmission, and reporting of Plaintiff's drug testing specimens and results.

43. Defendants further owed Plaintiff a duty to maintain accurate chain-of-custody procedures, specimen identification protocols, quality control measures, and reporting safeguards to ensure that drug testing results were accurately attributed to the correct individual.

44. Defendants knew or should have known that employers, prospective employers, regulatory agencies, and third-party reporting systems would rely upon the accuracy of the drug testing information generated, maintained, and reported by Defendants.

45. Defendants breached their duties by, among other things:

    a. Failing to properly identify and track Plaintiff's specimens;

    b. Failing to maintain accurate chain-of-custody procedures;

    c. Failing to implement and follow reasonable quality assurance and verification procedures;

    d. Failing to detect discrepancies in specimen identification and reporting records;

    e. Failing to adequately investigate and correct known errors;

    f. Reporting inaccurate drug testing information; and

    g. Otherwise failing to exercise reasonable care under the circumstances.

46. As a direct and proximate result of Defendants' negligence, Plaintiff was falsely reported as having tested positive for cocaine metabolites.

47. As a direct and proximate result of Defendants' negligence, Plaintiff suffered damages, including lost business opportunities, lost income, reputational harm, costs associated with corrective testing and administrative proceedings, emotional distress, and other consequential damages in an amount to be proven at trial.

48. Accordingly, Plaintiff is entitled to actual damages, consequential damages, costs, interest, punitive damages permitted by law, and such other relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
*NEGLIGENT SUPERVISION, TRAINING, AND RETENTION*
**(Against All Defendants)**

49. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

50. At all relevant times, Defendants employed, supervised, trained, retained, managed, and controlled individuals responsible for collecting, processing, testing, reviewing, transmitting, and reporting drug testing information.

51. Defendants had a duty to exercise reasonable care in the supervision, training, retention, and oversight of employees, agents, contractors, and representatives involved in the drug testing process.

52. Defendants knew or should have known that inadequate supervision, training, verification procedures, or oversight could result in the misidentification of specimens, inaccurate reporting of drug test results, and substantial harm to individuals subjected to testing.

53. Defendants breached their duties by failing to adequately supervise, train, monitor, and oversee the individuals responsible for specimen collection, specimen identification, testing, verification, review, and reporting.

54. Upon information and belief, the specimen identification and reporting errors described herein occurred as a result of inadequate supervision, training, policies, procedures, quality-control measures, and oversight.

55. As a direct and proximate result of Defendants' negligent supervision, training, and retention, Plaintiff was falsely reported as having tested positive for cocaine metabolites and suffered the damages described herein.

11

**THIRD CAUSE OF ACTION**
*DEFAMATION*
**(Against All Defendants)**

56. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

57. Defendants published and communicated to third parties, including J.B. Hunt and the FMCSA Drug and Alcohol Clearinghouse, statements indicating that Plaintiff tested positive for cocaine metabolites and/or violated applicable drug testing requirements.

58. The statements communicated by Defendants were false.

59. Defendants knew or should have known that the statements were false, or acted negligently, recklessly, and/or with conscious disregard for the truth in publishing and republishing the statements.

60. The statements tended to injure Plaintiff in his trade, profession, and occupation as a commercial truck driver and business owner.

61. The statements exposed Plaintiff to public contempt, diminished his standing in the trucking industry, and interfered with his ability to obtain employment and contractual opportunities.

62. As a direct and proximate result of Defendants' publication of the false statements, Plaintiff suffered damages, including loss of business opportunities, loss of income, reputational harm, emotional distress, and other consequential damages.

63. The defamatory statements constitute defamation per se because they directly impugn Plaintiff's fitness and qualifications to engage in his profession as a commercial motor vehicle operator.

12

## FOURTH CAUSE OF ACTION
*TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND PROSPECTIVE CONTRACTUAL RELATIONS*
**(Against All Defendants)**

64. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

65. At all relevant times, Plaintiff and J.B. Hunt Transport Services, Inc. entered into a pre-hire agreement and contractual relationship pursuant to which Plaintiff and Precision Logistics by Summers Wright, LLC were expected to provide commercial transportation services for J.B. Hunt upon completion of the onboarding process.

66. In addition to the existing contractual relationship, Plaintiff possessed a legitimate business expectancy and prospective economic relationship with J.B. Hunt that would have generated substantial revenue and business opportunities.

67. Defendants knew or should have known that Plaintiff's drug test results would be used by J.B. Hunt in determining whether Plaintiff would be approved to perform transportation services and continue the onboarding process.

68. Defendants intentionally, recklessly, and/or negligently communicated, reported, published, maintained, and/or failed to correct false information indicating that Plaintiff tested positive for cocaine metabolites.

69. Defendants knew or should have known that the communication and publication of such information would interfere with Plaintiff's contractual and prospective business relationship with J.B. Hunt.

70. As a direct and proximate result of Defendants' actions and omissions, J.B. Hunt rescinded Plaintiff's pre-hire agreement, terminated the onboarding process, and refused to permit Plaintiff to perform services on its behalf.

71. Defendants' conduct was without justification and constituted an improper interference with Plaintiff's contractual and prospective business relations.

72. As a direct and proximate result of Defendants' interference, Plaintiff suffered substantial damages, including lost business opportunities, lost profits, lost income, reputational harm, and other consequential damages in an amount to be determined by the jury.

**<u>FIFTH CAUSE OF ACTION</u>**
*BREACH OF CONTRACT*
**(Against All Defendants)**

73. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

74. Upon information and belief, one or more contracts existed among Defendants and/or between Defendants and J.B. Hunt governing the collection, processing, testing, verification, administration, and reporting of drug test results for applicants and commercial drivers, including Plaintiff.

75. The purpose of such agreements was to ensure the accurate collection, testing, verification, maintenance, and reporting of drug testing information concerning individuals subjected to testing.

76. Plaintiff was an intended third-party beneficiary of such agreements because the services contemplated by the agreements were performed directly upon Plaintiff's specimens, involved Plaintiff's personal testing information, and were intended to produce accurate testing results upon which Plaintiff's employment and business opportunities would depend.

77. Defendants breached their contractual obligations by failing to accurately collect, identify, process, verify, maintain, and report Plaintiff's drug testing information.

78. Defendants further breached their contractual obligations by attributing to Plaintiff a positive cocaine test result that did not belong to Plaintiff and by failing to timely correct the resulting errors.

79. As a direct and proximate result of Defendants' breaches, Plaintiff suffered the damages described herein.

## JURY TRIAL REQUESTED

80. Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

81. **WHEREFORE**, Plaintiff prays that this Honorable Court issue its judgment:

   a. In favor of Plaintiff and against Defendants WorkforceQA, LLC, Psychemedics Corporation, and Concentra, Inc. d/b/a Concentra Health Services, Inc., Concentra Medical Centers, and Concentra South Carolina, LLC for all Causes of Action alleged herein;

   b. Awarding Plaintiff actual, compensatory, consequential, special, and general damages in an amount to be determined by a jury;

   c. Awarding Plaintiff damages for lost business opportunities, lost contracts, lost income, lost profits, loss of future earning capacity, and other economic losses sustained as a result of Defendants' actions and omissions;

   d. Awarding Plaintiff damages for injury to his reputation, standing within the trucking industry, embarrassment, humiliation, emotional distress, mental anguish, and other non-economic losses suffered as a result of Defendants' conduct;

   e. Awarding Plaintiff punitive damages as permitted by law for Defendants' reckless, willful, wanton, and/or grossly negligent conduct;

15

16

f.  Issuing appropriate injunctive and equitable relief requiring the correction, removal, or retraction of any inaccurate drug testing information concerning Plaintiff maintained by Defendants or reported to third parties as a result of the conduct complained of herein;

g.  Awarding Plaintiff pre-judgment interest, post-judgment interest, costs of this action, and such other litigation expenses as may be allowed by law;

h.  Granting such other and further relief as this Court may deem just, proper, and necessary to afford complete relief to the Plaintiff.

[SIGNATURE BLOCK ON THE FOLLOWING PAGE]

Respectfully Submitted,

s/Donald Gist
Donald Gist (13098)
*GIST LAW FIRM, P.A.*
4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

*Attorney for Plaintiff*

July 22, 2026

17